# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LATAVIA WILSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 20-cv-05969 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| RADIUS GLOBAL SOLUTIONS, LLC, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Latavia Wilson defaulted on a Home Depot credit card and her debt went into collections with Radius Global Solutions, LLC ("RGS"), a debt collection agency. RGS called Wilson nine times using phone numbers with Chicago area codes. Though she did not answer those calls, Wilson called back five times, spending just over a minute in total time on the phone with RGS. When she returned the missed calls, she did not speak to an agent or ask them to stop calling; instead, she heard an introductory recording and immediately hung up. Wilson subsequently sued RGS under the Federal Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, alleging that RGS misled her by using Chicago area codes despite not having a physical presence in Chicago and that it failed to disclose its identity when calling her. RGS now seeks summary judgment on Wilson's claims. (Dkt. No. 31.) As explained below, the Court grants summary judgment in RGS's favor because Wilson lacks Article III standing under the law of this Circuit.

## BACKGROUND

Except where otherwise indicated, the following facts are undisputed.

After Wilson defaulted on debt associated with a Home Depot credit card issued by Citibank, N.A., Calvary SPV I, LLC ("Calvary") purchased the debt. (Pl.'s Resp. to Def.'s Statement of Facts ("PRDSF") ¶¶ 1–2, Dkt. No. 35.) Calvary placed her debt into collections in August 2020, relying on RGS as its debt collector. (*Id.* ¶ 2.) Over the next five weeks, RGS placed nine calls to Wilson in an attempt to collect on the debt. (*Id.* ¶ 4.) The calls came from three different phone numbers bearing the "312" area code, which covers part of the City of Chicago. (*Id.* ¶ 5.) Wilson's phone number also begins with a "312" area code. (*Id.* ¶ 3.)

Wilson did not answer any of RGS's calls to her phone number, but five calls from her phone number were placed to RGS shortly after RGS's calls to her. (*Id.* ¶¶ 3, 6.) Generally, when she misses a call from a non-local area code, Wilson does not return the call. (Def.'s Resp. to Pl.'s Statement of Additional Facts ¶ 2 ("DRPSAF"), Dkt. No. 37.) She does, however, return missed calls from local area codes. (*Id.* ¶ 1.) According to Wilson, she maintains a practice of returning missed calls from local area codes—including the calls she placed to RGS—out of concern that the caller might be one of her children or a relative with an emergency. (*Id.* ¶ 3.) That said, Wilson also testified that she answers phone calls regardless of the area code. (Def.'s Statement of Facts ("DSF") Ex. 3, Wilson Dep. at 46:22–24, Dkt. No. 32-3.)[1]

---

[1] Wilson's testimony on this point is inconsistent. At her deposition, she first testified that she answers calls from any area code. Two questions later, she said she would not answer a call from a "random area code." (Pl.'s Statement of Additional Facts ("PSAF") Ex. 2, Wilson Dep. at 47:10–11, Dkt. No. 34.) Yet, in response to the next question, she testified that she would answer a call from a "456" area code if she were able to do so. (*Id.* at 47:12–16.) "456" is not an active United States area code and was used by Wilson elsewhere in her deposition as an example of an area code that she would not call back. *Id.* at 65:22–24.

With respect to the calls at issue here, Wilson claims she called RGS back while at work. (DRPSAF ¶ 4.) While she states that she waited to do so until her next break,[2] RGS disputes her credibility on that point, citing RGS's call log which indicates that each return call from Wilson's telephone number was placed shortly after, and often within seconds of, RGS's outbound call. (*Id.*) On each occasion, Wilson heard a recording identifying RGS; also, on each occasion, she hung up before speaking to a representative who would have identified that she had called RGS. (*Id.* ¶¶ 6–7.)

Wilson claims that calling back RGS while at work ate into her break time, which she testified she generally used to call her children and check on them. (DRPSAF ¶ 5.) Spending her break time calling back RGS meant that she "didn't really have time" to call her children. (*Id.*)[3] The five calls Wilson placed to RGS totaled sixty-six seconds on the phone. (DSF Wilson Dep. at 122:15–22.) Wilson did not make payments to RGS, write to them, or otherwise ask them to stop calling her. (PRDSF ¶¶ 10–12.)

Wilson has brought this suit alleging violations of the FDCPA, 15 U.S.C. § 1692 *et seq.* She alleges that RGS, which she claims is based on the East Coast,[4] placed calls from the East

---

[2] While it appears that each of Wilson's calls was placed while she was at work—or, at least, there is no evidence indicating otherwise—the Court notes that Wilson appears to interpret "break" quite broadly to include any time when she is not working. That includes "personal time" and any time she is "off work." (DSF Wilson Dep. at 105:9–21.) The record is silent as to Wilson's work schedule or her work hours during the relevant time.

[3] RGS questions the credibility of Wilson's deposition testimony supporting this fact, noting that elsewhere in her deposition, Wilson testified that she **would**, in fact, call her children back after speaking with RGS. (DRPSAF ¶ 5.) But the cited deposition excerpt does not make clear whether Wilson was talking about RGS calls specifically or phone calls at work generally. Moreover, Wilson further testified that she would "maybe call" her children and "might have called [her] kids." (DSF Wilson Dep. 75:6–13, Dkt. No. 32-3.) Accordingly, the Court considers the fact is disputed and will view it in the light most favorable to Wilson. *Donald v. Wexford Health Sources, Inc.*, 983 F.3d 451, 457 (7th Cir. 2020).

[4] RGS has not presented any evidence regarding whether or not it is located in the Chicago area. For purposes of summary judgment, the Court draws all reasonable inferences in favor of Wilson as the nonmoving party and therefore infers that RGS is based on the East Coast.

Coast to Wilson using phone numbers with Chicago area codes so as to entice her to answer the phone. (Second Am. Comp. ("SAC") ¶¶ 7–8, Dkt. No. 14.) She alleges that this practice—using local area codes—violates two provisions of the FDCPA. First, in Count One, she claims that it violates 15 U.S.C. § 1692d(6), which prohibits "the placement of telephone calls without meaningful disclosure of the caller's identity." *Id.* And second, in Count Two, she contends that it violates 15 U.S.C. § 1692e, which forbids debt collectors from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Id.* RGS seeks summary judgment on both counts.

## DISCUSSION

When presented with a summary judgment motion, the Court must determine if a genuine issue of material fact exists such that a reasonable jury could return a verdict for the nonmoving party. *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 619 (7th Cir. 2010). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (internal quotation marks omitted). The underlying substantive law "identif[ies] which facts are material." *Id.* (internal quotation marks omitted). The Court's function at summary judgment is to "determine whether there is a genuine issue for trial," not make determinations of truth or weigh evidence. *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087 (7th Cir. 2018). In deciding whether there is a genuine issue, the Court must "construe all facts and reasonable inferences" in the light most favorable to the nonmovant. *Nischen v. Stratosphere Quality, LLC*, 865 F.3d 922, 928 (7th Cir. 2017).

I. **Standing**

In briefing summary judgment, the parties did not address the question of standing. But "if there is no Article III standing, the court is obliged to dismiss the suit even if the standing issue has not been raised." *MainStreet Org. of Realtors v. Calumet City*, 505 F.3d 742, 747 (7th

4

Cir. 2007). The Court identified a potential standing issue here and requested that the parties submit additional briefing on whether Wilson has Article III standing to sue. (Dkt. No. 57.) The request for additional briefing comported with the Seventh Circuit's favored approach, which cautions against unilateral dismissal on standing grounds and instead encourages providing a plaintiff notice and an opportunity to amend. *United States v. Furando*, 40 F.4th 567, 579 (7th Cir. 2022). In particular, the Court sought input from the parties as to the effect of recent Seventh Circuit cases discussing standing in the FDCPA context and specifically directed their attention to *Pierre v. Midland Credit Management, Inc.*, 29 F.4th 934 (7th Cir. 2022). But the parties' supplemental briefing was not on point. Rather than adversarial briefing, they chose instead to argue jointly that Wilson does, in fact, have standing. (*See* Dkt. No. 58.) The joint submission does not even mention *Pierre*, the case to which the Court pointed the parties. Indeed, the submission does not cite a single Seventh Circuit case addressing standing in the FDCPA context.

So the Court begins with an issue not squarely addressed by either party: whether Wilson has standing under Article III to bring this suit. Standing, necessary for federal subject-matter jurisdiction, requires Wilson to establish that she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial ruling." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). At the summary judgment stage, the Court's standing inquiry is "constrained by the operative complaint." *Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1190 (7th Cir. 2021). An "eligible harm for standing purposes" is "one that is both grounded in the complaint and uncontradicted by the record." *Id.* at 1191. As is often the case, whether Wilson has established standing turns in large part on whether she suffered an injury in fact. To meet that requirement, she must establish

that "she suffered an invasion of a legally protected interest that is 'concrete and particularized' and 'actual and imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

Wilson's injury is particularized if she has suffered an injury in a way that is specific to her, rather than a "generalized grievance shared by all members of the public." *Larkin v. Fin. Sys. of Green Bay*, 982 F.3d 1060, 1064 (7th Cir. 2020). An injury can be concrete whether it is tangible or intangible, but not if a plaintiff only asserts a "'bare procedural violation' of a statute." *Id.* (quoting *Spokeo*, 578 U.S. at 341). For example, when a plaintiff asserts a statutory violation but is "not at any risk of losing her statutory rights because there was no prospect that she would have tried to exercise them," she does not have standing. *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 334 (7th Cir. 2019). Here, Wilson's claim to standing turns on the concreteness of her alleged injury.

In the FDCPA context, "anxiety and embarrassment are not injuries in fact." *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668 (7th Cir. 2021). Nor are "stress and confusion," unless they are accompanied by physical manifestations and a qualified diagnosis. *Pennell v. Global Tr. Mgmt.*, 990 F.3d 1041, 1045 (7th Cir. 2021). Nor are annoyance or intimidation stemming from a violation. *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069, 1071 (7th Cir. 2020). Wilson alleges that she "used her brief break time during her work day to call back [RGS's] local phone numbers," stating that she otherwise would have "used her limited break time to use the restroom, call her children, or just take a break." (SAC ¶¶ 10–11, 13.) She further alleges that use of local area codes "caused [her] to refrain from blocking [RGS's] calls, and the continuing calls were pestiferous to her." (*Id.* ¶ 12.) But to

establish standing, Wilson must present evidence that there is something for the court to remedy. *Pierre*, 29 F.4th at 938–39. She has not done so.

First, simply calling back a debt collector attempting to collect a valid debt is not a cognizable injury. As the Supreme Court has explained, a concrete injury is one with "a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (internal quotation marks omitted). Since *TransUnion*, the Seventh Circuit has clarified that "[m]aking a call to a debt collector is not closely related to an injury that our legal tradition recognizes as providing a basis for a lawsuit." *Pierre*, 29 F.4th at 939. As a guidepost for when standing is present, the Seventh Circuit stated that an FDCPA plaintiff must "experience . . . harm . . . caused by the defects [in a communication]." *Id.* And a statutory violation alone is not enough. *Id.* at 938. True, Wilson claims that she did not know that it was a debt collector on the line the first time RGS called. But she returned the first call thirteen seconds later, spending another thirteen seconds on the phone during which she heard RGS's identifying recording. And she never asked RGS to stop calling her. Wilson does not allege that she suffered adverse employment consequences due to returning the calls, such as poor treatment from her supervisors or supervisees because they knew she was receiving calls from debt collectors. (DSF Wilson Dep. at 105:22–106:19.) Nor did she lose pay, because she is a salaried employee who "get[s] paid for [her] regular hours anyway." (*Id.* at 57:19–20.) Rather, her complaint simply seems to be that she called back a debt collector. This is not a concrete, cognizable harm. *See Pierre*, 29 F.4th at 939 ("Pierre's response to the letter was to call Midland Credit to dispute the debt and to contact a lawyer for legal advice. These are not legally cognizable harms.").

Second, Wilson alleges that the need to call back RGS during her breaks prevented her from other activities, like enjoying her break, using the restroom, or calling to check on her children. As Wilson points out in the supplemental briefing, the Seventh Circuit has recognized that "time and money spent resolving fraudulent charges are cognizable injuries for Article III standing." *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 967 (7th Cir. 2016). But Wilson does not offer any evidence that the charges were fraudulent; to the contrary, she has admitted that she owes the debt. (*See, e.g.*, DSF, Ex. 1, Wilson Requests for Admission ¶ 1 ("1. Admit that you owe the debt described in your lawsuit. [A:] Admit."), Dkt. No. 32-1.)

Moreover, it is not clear that Wilson expended anything more than a *de minimis* amount of time returning calls, and it is not even clear that she returned calls while at work. Wilson declined to provide her work schedule from the relevant time period in 2020, making it difficult to ascertain whether her callbacks occurred from her breaks at work or not. (DSF Wilson Dep. at 57:6–8.) Now, one would generally assume that an allegation someone made phone calls on their break necessarily means that the calls occurred while at work. But Wilson defines "break" to include all time that she is not actively working. (*Id.* at 105:3–21.) This calls into question whether the callbacks occurred on work breaks or just during her personal time. Even drawing the inference in her favor that all five callbacks occurred on her breaks from her employment, Wilson does not explain how an average call of just over thirteen seconds long could prevent her from using her break time to use the restroom, call her children, or actually take a break.[5] Nor did Wilson point to a specific instance in which she was unable to use the restroom or call her children to check on them, instead relying on the speculative harm that she *might* have been

---

[5] In chronological order, the five calls Wilson placed to RGS lasted thirteen seconds, thirteen seconds, eleven seconds, eighteen seconds, and eleven seconds. (DSF Ex. 2 at 28, Dkt. No. 32-2.) The calls took place on August 11, August 12, August 17, September 16, and September 16, 2020. (*Id.*)

unable to do those things. Indeed, when directly asked at her deposition, Wilson was not certain that RGS's calls prevented her from calling her family, instead saying that she would "maybe just call and verify that everything is okay . . . . So, I might have called my kids before I went back to work." (DSF Wilson Dep. at 75:6–13.)

Finally, Wilson's SAC alleges that the calls were pestiferous to her, resulting in an injury-in-fact. (SAC ¶ 12 (citing *Gunn*, 982 F.3d at 1071).) In *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, the plaintiffs had received letters seeking collection of a valid debt. 982 F.3d at 1071. The Seventh Circuit held that they did not have standing because they only alleged that they were annoyed or intimidated by the letters as opposed to stating a cognizable harm. *Id.* But *Gunn* cited another case, *Gadelhak v. AT&T Services, Inc.*, 950 F.3d 458 (7th Cir. 2020), in which the Seventh Circuit held that pestiferous calls can, in some instances, cause cognizable injury. The *Gunn* court distinguished *Gadelhak* because "*Gadelhak* dealt with uninvited and unintelligible text messages, which intruded on the plaintiffs' seclusion." *Gunn*, 982 F.3d at 1071. Thus, the text messages at issue in *Gadelhak* resembled the tort of intrusion upon seclusion because they were "unwanted." *Gadelhak*, 950 F.3d at 462–63. But they were not unwanted simply because Gadelhak disliked receiving them, they were unwanted because they were in a language he did not speak, were from a service provider he did not use, and were sent despite the fact that his phone number was on the national "Do Not Call" registry. *Id.* at 460.

Wilson, by contrast, owed a debt that RGS was within its rights to call her to collect. Wilson surely found the calls unwanted; few people want to receive calls from debt collectors. But they were not unwanted in the sense that Gadelhak's were. *See Gunn*, 982 F.3d at 1071 ("They . . . owed a debt; the association and its law firm were entitled to communicate with them, no matter how unwelcome the Gunns found the demand for payment."). Had Wilson asked

9

RGS to stop calling her, then she may have a cognizable injury under this theory. *See, e.g.*, *Zurich Am. Ins. Co. v. Ocwen Fin. Corp.*, 990 F.3d 1073, 1082 (7th Cir. 2021) (affirming a court's finding of requisite FDCPA intent "when the caller continues to call after being requested to stop"); *Atkins v. Healthcare Revenue Recovery Grp.*, No. 21 CV 2408, 2023 WL 22138, at *3 (N.D. Ill. Jan. 3, 2023) (finding standing under a similar theory where the defendant continued to call the plaintiff after the plaintiff "told defendant to remove her from its database"). But Wilson did not do so. (PRDSF ¶ 11.) RGS was making calls it had a right to make to someone who had not asked it to stop.

As a separate matter, there is no indication that Wilson "suffer[ed] a concrete harm that [s]he wouldn't have incurred had the debt collector complied with the Act," a necessary predicate for FDCPA standing. *Wadsworth*, 12 F.4th at 669. She never made a payment on her debt. (PRDSF ¶ 12.) She found all debt collection calls equally stressful regardless of whether they came from Illinois or elsewhere. (DSF Wilson Dep. at 96:18–22.) And to the extent the calls were stressful, she neither saw a medical professional nor received a diagnosis for a condition stemming from that stress. (Wilson Requests for Admission ¶¶ 18–21.) The time she spent calling back, which she claims she only did because of the local area code, was negligible. (DSF Wilson Dep. at 122:15–22.) Wilson has offered no evidence of negative economic consequences, whether through overpayment (or underpayment) of the debt due to the area code or through her employment. In short, there is no indication that if RGS had followed her proposed solutions—such as using non-local area codes—Wilson would have done anything differently outside of not returning the calls. And when a debtor winds up in the same place regardless of whether a collector followed proper procedures, the Seventh Circuit has held there is no standing. *See Markakos v. Medicredit, Inc.*, 997 F.3d 778, 782 (7th Cir. 2021) (finding no FDCPA standing

10

despite a dunning letter listing an incorrect debt amount and debt collector because the plaintiff did not make any payments and was able to properly dispute her debt). In other words, "no harm, no foul." *Casillas*, 926 F.3d at 331 (finding no FDCPA standing when a debt collector sent a dunning letter that failed to specify the procedure for a debtor to trigger statutory protections).

Wilson also alleges in her complaint that upon realizing the calls came from RGS, she "became so angry that she began to shake." (SAC ¶ 11.) Wilson does not develop that theory in her opposition to summary judgment or the supplemental submission, nor does she include any facts relating to shaking in her Local Rule 56.1 statement of additional facts. In certain situations, physical manifestations of stress can confer standing. *See Pennell*, 990 F.3d at 1045 (stating that "stress by itself with no physical manifestations and no qualified medical diagnosis" is not a concrete harm). But even if Wilson had presented evidence that she began to shake,[6] *Pennell* indicates that without a diagnosis of some sort, she likely still has not established a concrete harm. And Wilson admitted that she has not been examined, treated, or diagnosed by a physician or mental health professional for symptoms causally related to the calls. (Wilson Requests for Admission ¶¶ 18–21.)

In short, Wilson has not established that she suffered an injury in fact. That failure means that she does not have standing to bring her claims in federal court. Her case is thus dismissed without prejudice on jurisdictional grounds. *White v. Ill. State Police*, 15 F.4th 801, 808 (7th Cir. 2021) ("[A] dismissal on standing grounds can never be with prejudice.").

---

[6] Throughout their joint submission on standing, the parties state that Wilson has made "allegations" sufficient to confer standing. But this case is at the summary judgment stage. The standing inquiry requires that "each element must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. In other words, allegations alone do not suffice at this stage. Wilson must offer evidence of each element of standing and, as the party seeking federal jurisdiction, bears the burden of establishing jurisdiction. *Id.* ("The party invoking federal jurisdiction bears the burden of establishing these elements.").

11

## II. Merits

Even if Wilson did have standing, RGS would nonetheless be entitled to summary judgment on the merits. While it is not necessary to examine the substance of Wilson's claims, the Court nevertheless does so in the interest of completion.

### A. Section 1692e (Count II)

Count II asserts a claim under 15 U.S.C. § 1692e, which forbids debt collectors from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Id.* The statute lists sixteen non-limiting types of violative conduct. Wilson does not invoke a specific subsection, instead relying on the general application quoted above.

"In determining whether a communication is 'false, deceptive, or misleading,' we evaluate the disputed language from the objective language of an unsophisticated debtor." *Johnson v. Enhanced Recovery Co.*, 961 F.3d 975, 982 (7th Cir. 2020) (quoting § 1692e). "The unsophisticated debtor is uninformed, naïve, and trusting, but possesses rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses reasonable intelligence, and is capable of making basic logical deductions and inferences." *Boucher v. Fin. Sys. of Green Bay*, 880 F.3d 362, 366 (7th Cir. 2018) (internal quotation marks omitted). For § 1692e purposes, a misleading statement must be material to the unsophisticated debtor. *Id.* And the consumer must be misled regarding the actual payment of a debt. *Johnson*, 961 F.3d at 982; *see also Woods v. LVNV Funding, LLC*, 27 F.4th 549, 550 (7th Cir. 2022) ("[B]ecause the statements in those letters were not ones that would influence a consumer's decision to pay a debt, they were not 'false' within the meaning of § 1692e(10)" (internal quotation marks and ellipses omitted).).

RGS argues that there is simply nothing misleading for § 1692e purposes about its use of a local area code, and that the local area code, even if misleading, was not *materially* misleading because it did not influence whether or not Wilson paid her debt. Wilson responds that her interpretation of "misleading" is reasonable and supported by other courts and legislative bodies and that the area code did influence her decision to call back (as opposed to a payment decision). Wilson also argues that summary judgment is not warranted because an unsophisticated consumer might be "misled into accepting or returning a call" that comes from a local area code. (Pl.'s Opp'n at 3, Dkt. No. 34.) At bottom, Wilson's argument revolves around her contention that whether to answer or return a telephone call constitutes a consumer decision that falls within § 1692e.

The Seventh Circuit has not directly addressed use of area codes in a § 1692e context; rather, most of its § 1692e cases address dunning letters sent to debtors. And those cases establish that to be misleading, a consumer must be misled about whether to pay a debt, and not some ancillary detail. *Boucher*, 880 F.3d at 366 ("[A] statement is material if it would influence a consumer's decision to pay a debt in response to a dunning letter." (internal quotation marks omitted)); *Muha v. Encore Receivable Mgmt., Inc.*, 558 F.3d 623, 628 (7th Cir. 2009) ("The purpose of the [FDCPA] is to protect consumers, and they don't need protection against false statements that are immaterial in the sense that they would not influence a consumer's decision—in the present context his decision to pay a debt in response to a dunning letter."). RGS has also identified a number of courts, including one in this District, that have addressed a question on point: Whether use of local area codes, despite a debt collector being based outside of the region, violates the FDCPA so long as the number actually belongs to the debt collector—

13

that is, if someone calls back, the debt collector will be on the other end of the line.[7] Each found that such a situation did not violate the FDCPA.

While the Seventh Circuit has not yet addressed the specific question at issue, it has made clear that for a communication to be misleading for § 1692e purposes, it must materially mislead the consumer in their decision as to whether to pay a debt—not as to whether to return a phone call. *Boucher*, 880 F.3d at 366; *Woods*, 880 F.3d at 550. Wilson argues that it is reasonable to conclude that displaying a local area code is misleading, noting that "many others have also taken this same position." (Pl.'s Resp. at 1.) But the "many others" are entirely unavailing here.

First, Wilson points to proposed legislation in Massachusetts. The fact that a legislative body in a different state has proposed—not even enacted—a law that might support a portion of her argument is entirely unconvincing. And Wilson's cases are just as unconvincing. First, in *In re Saxton*, 91 A.3d 348 (R.I. 2014), a Georgia attorney owned a Rhode Island phone number and used it to advertise in Rhode Island. But the attorney was not a member of the Rhode Island Bar and his firm was not authorized to practice in Rhode Island. The case arose under Rhode Island's Rules of Disciplinary Procedure, not the FDCPA, in part because the attorney was not doing any debt collecting. Second, while a district court did note that use of local area codes was misleading in *Jance v. Homerun Offer LLC*, No. 4:20-cv-00482-TUC-JGZ, 2021 WL 3270318, at *4 (D. Ariz. July 30, 2021), the case arose at a different stage of litigation (motion to dismiss) with a different burden of proof, under a different statute (the Telephone Consumer Protection

---

[7] *See, e.g.*, *Brown v. MRS BPO, LLC*, No. 1:20 CV 06762, 2023 WL 6198815, at *4 (N.D. Ill. Sept. 22, 2023); *Cunningham v. Radius Global Sols., LLC*, No. 4:20-CV-00294, 2020 WL 5518073, at *6 (E.D. Tex. Sept. 14, 2020); *Mendoza v. Diversified Consultants, Inc.*, No. 18-2005, 2019 WL 2524117, at *5 (E.D. Pa. June 18, 2019); *Bermudez v. Diversified Consultants, Inc.*, No. 18-2004, 2019 WL 415569, at *3 (E.D. Pa. Feb. 1, 2019); *Bien v. Stellar Recovery, Inc.*, No. CA 14-366 S, 2015 WL 5554670, at *1, *3 (D.R.I. Sept. 21, 2015); *Scheffler v. Integrity Fin. Partners, Inc.*, No. 12-188, 2013 WL 9768539, at *3–4 (D. Minn. Oct. 28, 2013); *Carman v. CBE Group, Inc.*, 782 F. Supp. 2d 1223, 1233–34 (D. Kan. 2011).

Act ("TCPA"), 47 U.S.C. § 227(b)), and did not involve debt collection. Notably, the propriety of area codes does not implicate any element of a TCPA claim, which include that the defendant called a cell phone with an automatic telephone dialing system without the recipient's prior express consent. *Jance*, 2021 WL 3270318 at *3. None of these cited authorities convince the Court that use of a local area code is misleading for § 1692e purposes.

Next, Wilson argues that summary judgment should not be granted in RGS's favor because the local area code *did* influence her decision to return RGS's calls. What is more, she argues, the use of a local area code might influence an unsophisticated consumer's decision to answer or return a debt collector's call. But, as discussed, there is no support for the proposition that every potential decision made by a consumer falls within § 1692e. Wilson's argument is especially tortured in light of her testimony that she would have *answered* the call if it came from a non-local area code but would not have *called back*. As before, Seventh Circuit caselaw weighs in favor of misleadingness meaning, for this purpose, misleading a consumer in terms of whether to pay a debt, not whether to take minor administrative steps ancillary to payment.

For these reasons, even if she had standing, the Court would find that Wilson has not established a genuine question of material fact as to whether RGS violated § 1692e.

### B. Section 1692d(6) (Count I)

Wilson also alleges a violation of 15 U.S.C. § 1692d(6), which prevents debt collectors from engaging in "conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt," including by "the placement of telephone calls without meaningful disclosure of the caller's identity." *Id.*[8] In seeking summary judgment,

---

[8] The statute includes an exception for calls placed "as provided in section 1692b of this title" Section 1692b, in turn, applies to the circumstance where a debt collector "communicat[es] with any person other than the consumer" and is therefore inapplicable here.

15

RGS argues that no one from RGS ever spoke to Wilson, and thus RGS had no opportunity to identify itself. Wilson responds that the statute forbids placing calls without meaningful disclosure, not the connection of calls, and argues that RGS should have identified itself by leaving a voicemail or displaying its name on caller ID.

But Wilson never answered a call, so there was no opportunity for RGS to tell her who was calling when she answered. And when she called back, she testified that an automated message did identify the number as belonging to RGS. (DSF Wilson Dep. at 77:11–16.) So the only two ways RGS could have meaningfully identified itself are those identified in Wilson's brief: by leaving a voicemail or through caller ID.[9] Wilson has testified that all calls from debt collectors leave her with the same level of stress and anger—so leaving a message or using caller ID would have resulted in identical harm. (*Id.* at 96:18–22.) Moreover, using the company's name on the caller ID was not likely to result in a meaningful difference—"Radius Global Solutions, Inc." does not immediately identify the company as a debt collector, so Wilson would likely have had to search for the name to determine its business, which likely would have taken just as long, if not longer, than calling RGS back.

Wilson cites two cases in support of her § 1692d(6) claim: *Sussman v. I.C. Systems, Inc.*, 928 F. Supp. 2d 784 (S.D.N.Y. 2013), and *Langdon v. Credit Management., LP*, No. C 09-3286 VRW, 2010 WL 3341860 (N.D. Cal. 2010). In *Sussman*, the plaintiff survived a motion to dismiss because the caller disconnected the call "prior to or as soon as Plaintiff . . . or Plaintiff's

---

[9] RGS argues that Wilson has waived her caller ID "theory" by failing to raise it in her complaint. But the case it cites involved a situation where a plaintiff raised an entirely different instance of employment retaliation in a brief so as to satisfy a statute of limitations. *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002). Here, Wilson listed examples of how RGS could have disclosed its identity; she did not seek to add claims or allegations or otherwise substantively "amend [her] complaint through arguments in [her] brief." *Id.* Though it is irrelevant to the disposition, the Court does not deem Wilson's caller ID example to be waived.

voice mail answered the call." 928 F. Supp. 2d at 794 (internal quotation marks omitted). *Langdon*, which also arose at the motion to dismiss stage, similarly involved allegations that a collector would "hang[] up the line when plaintiff or his answering machine answers." 2010 WL 3341860, at *2.

But several courts in this District have concluded at the summary judgment stage that a debt collector's failure to leave a voicemail does not qualify as the type of harassing conduct contemplated by § 1692d(6). *See, e.g.*, *Leavell v. Fin. Recovery Servs., Inc.*, No. 20 C 6908, 2022 WL 1641721, at *5–6 (N.D. Ill. May 24, 2022); *Johnson v. Ditech Fin., LLC*, No. 15-cv-0996, 2017 WL 3642061, at *3 (N.D. Ill. Aug. 24, 2017) (collecting cases in a situation involving ninety-nine calls from a debt collector that did not leave any messages). And this Court agrees. A phone number associated with RGS appeared on Wilson's Caller ID and RGS identified itself when she called that number; Wilson has not presented any evidence that RGS sought to conceal its identity. That RGS did not use its company name on outbound caller ID was not misleading. It is undisputed that if Wilson had stayed on the phone when she called back, a live RGS representative would have identified herself as such. (PRDSF ¶ 6.) It is also undisputed that, when Wilson called the number, a voice recording immediately identified itself as belonging to RGS. (*Id.* ¶ 7.) This occurred quickly enough that Wilson was aware who she had called despite spending, on average, only thirteen seconds on the phone.

Wilson also ignores § 1962d's prefatory clause, which prohibits "conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. She presents no argument that local area codes from a non-local caller have this natural consequence. At best, she argues that she is concerned that a family member may be undergoing an emergency, and even that must be inferred from her statement of

17

additional facts. But she does not argue that the natural consequence of the practice is harassment, oppression, or abuse.

For all these reasons, even if Wilson had standing, no reasonable jury could find that RGS violated § 1692d(6).

## CONCLUSION

For the foregoing reasons, summary judgment is granted, albeit on different grounds than requested. Wilson's case is dismissed without prejudice for lack of Article III standing. But even if she had standing, RGS would be entitled to summary judgment based on the merits of Wilson's claims against it. The Clerk will enter Judgment in favor of RGS.

ENTERED:

Dated: September 29, 2023

_____
Andrea R. Wood
United States District Judge